IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
March 18, 2002 Session

## MARTIN DOOR & WINDOW COMPANY, INC. v. THOMAS DONEGAN d/b/a THE CONSTRUCTION TEAM, ET AL.

**Appeal from the Chancery Court for Wilson County**
**No. 97321      C. K. Smith, Chancellor**

_____

**No. M2001-01230-COA-R3-CV - Filed June 13, 2002**

_____

Notwithstanding that plaintiff, a materialman, was aware that a general contractor was constructing a residence for the owner, upon non-payment of invoices submitted to the contractor, the plaintiff filed a lien against the owner's property, claiming a right by separate contract. The Chancellor disagreed, holding that only a contractor may file a lien and, further, that the plaintiff did not contract with the owner as alleged. We affirm.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Affirmed**

WILLIAM H. INMAN, SR. J., delivered the opinion of the court. WILLIAM C. KOCH, JR. and PATRICIA J. COTTRELL, J.J., filed concurring opinions.

Todd E. Panther, Nashville, Tennessee, for appellant, Martin Door & Window Company, Inc.

Gary M. Eisenberg, Clarksville, Tennessee, for appellee, Wallace Cornett, Jr.

### OPINION

This is a complaint to enforce a materialman's lien. Alternatively, the plaintiff seeks damages for breach of contract or a recovery under *quantum meruit.*

The plaintiff alleged that on February 14, 1996, it contracted with Mr. Cornett to supply building materials for improvements to property owned by Mr. Cornett, and on June 18, 1996 it contracted with The Construction Team to supply materials for improvements to the property of Mr. Cornett.

On November 20, 1996, the date of the last delivery of materials, there remained owing to the plaintiff the sum of $7,824.47 plus service charges and attorney fees, according to the allegations of the complaint. A notice of lien was filed on March 19, 1997.

Mr. Cornett, the owner, denied that he contracted with the plaintiff as alleged. He counter-claimed against the plaintiff for damages allegedly incurred on account of the filing of a meritless lien; he cross-claimed against The Construction Team alleging that on February 28, 1996, he and The Construction Team entered into a contract to build a single family dwelling, and that the funds he paid the contractor included the amount claimed by the plaintiff to be owing. He sought a recovery from The Construction Team "in an amount equal to that to which the original plaintiff may be entitled to recover from this defendant."

The plaintiff, as counter-defendant, denied any liability to Mr. Cornett on account of the filing of the lien.

## **The Evidence**

An official of the plaintiff, Ms. Henley, testified that Mr. Cornett signed a credit application because "he wanted to buy the materials that we supplied for his house when he built it," and, later, that The Construction Team, whom Mr. Cornett had 'hired' to build his house,[1] also signed a credit application.

Delivery of building materials[2] began soon after the credit applications were executed. According to Ms. Henley, Mr. Cornett would come in from time to time "to pick things up and he was aware that we weren't getting our money." The invoices which accompanied the materials were made out to The Construction Team, even when the materials were picked up by Mr. Cornett.

On occasion, Mr. Cornett, or his father, would pay for the materials either of them picked up.

Ms. Henley became concerned about the account balance. She discussed the problem with Mr. Cornett "and he would pay us sometimes," and "sometimes The Construction Team would pay us." She testified that once they would get caught up "we would release more material but toward the end, when Mr. Cornett came in, I suggested to him that he knew that we were not getting our money. Rather than for him to continue to pay The Construction Team, would it probably be a good idea just to pay us directly and we wouldn't have to worry about it and Mr. Cornett agreed that was a good idea." The record does not reveal whether the matter went beyond the "good idea" stage.

Mr. Cornett testified that he 'hired' The Construction Team to build the house. He said materials that "had my invoice name on them, we picked them up, and paid for them."

He testified that The Construction Team caused problems "throughout the whole job," because of misapplications of funds, and toward the end "I released them enough money . . . and they promised me that they would pay Martin Door and Window and they didn't." Still later, Mr.

---

[1] Any contract between Cornett and The Construction Team is not in the record.

[2] More than windows and doors, apparently.

Cornett made another payment to The Construction Team and "they promised me they were going to pay them and they didn't."

On cross-examination, he testified that he consulted several suppliers of materials from whom he sought bids, and that the bid from the plaintiff was lowest. He reported this fact to The Construction Team who approved it, and then informed the plaintiff that "we wanted to accept the bid." He emphasized that he was not the contractor.

Parenthetically, it is worth noting that Mr. Cornett did not explain - nor was he asked to explain - in light of his testimony that he 'hired' The Construction Team to build his house, apparently for a fixed amount, why he undertook to purchase, or arrange for the purchase of doors and windows and possibly other materials. He was acting either on his own behalf or as agent for The Construction Team. For instance, he testified that he met Harry Howland, another official of the plaintiff, and told him that "I was building a house," and that Martin Windows and Door Inc. had "given me a bid." He said, "I've talked it over with The Construction Team and they said you could ship the windows to us." According to Mr. Cornett, Howland agreed and said, "would you mind filling out a credit application? This is all it is. I said, sure."

Mr. Cornett further testified that he never paid for materials invoiced to The Construction Team, but only for "invoices that had my name on it. That was the door locks."

## The Findings and Judgment

The trial judge initially expressed doubt that the Application for Credit was a contract, because the proof indicated it was intended by the parties to be only an application for credit although portions of it used contractual language, such as "the undersigned hereby agrees to terms of sale which are stated on each invoice." But because the plaintiff required The Construction Team to execute an Application for Credit which included *an additional page* that clearly constituted a contract to purchase and pay for materials used in the construction of the dwelling, the trial judge concluded that Mr. Cornett did not contract with the plaintiff as alleged. He further held that only a general contractor may file a lien as provided by Tennessee Code Annotated § 66-11-146 which "overrides Tennessee Code Annotated § 66-11-102." The suit of the plaintiff was accordingly dismissed. Mr. Cornett was awarded damages on his counterclaim.[3] The plaintiff appeals.

## The Issues

The plaintiff presents for review two issues: (1) Whether the evidence preponderates against the finding that the plaintiff did not contract with Mr. Cornett as alleged, and (2) Whether the conclusion of the Chancellor that Tennessee Code Annotated § 66-11-146 "overrides" Tennessee Code Annotated § 66-11-102. Our review is *de novo* on the record with a presumption, as to factual

---

[3] The award of damages to Mr. Cornett is not an issue presented for review.

findings, that the judgment is correct. Rule 13(d), Tenn. R. App. P., ***Tennessee Farmers Mutual Insurance Company v. Moore***, 958 S.W.2d (Tenn. Ct. App. 1997). There is no presumption of correctness with respect to questions of law.

## Analysis

Mr. Cornett never explained - nor was he requested to explain - why he, as owner, solicited bids from ten (10) suppliers of doors and windows, and settled on the bid submitted by the plaintiff, since he had contracted with a general contractor to build his house. If he did not intend to be personally bound by his actions, the conclusion seems reasonable that he was acting merely as agent for the general contractor, although the submission by him, as owner, of an application for credit is somewhat supportive of the insistence of the plaintiff that it contracted with the plaintiff. Arrayed against this argument is the undisputed fact that the contractor was required to submit an Application for Credit which, on account of a third page, clearly constituted a contract with the plaintiff, superimposed upon the *acknowledgment of the plaintiff* that Mr. Cornett had "hired" a general contractor.

The plaintiff relies upon Tennessee Code Annotated § 66-11-102 which provides:

66-11-102. Lien for work and materials. – (a) There shall be a lien upon any lot of ground or tract of land upon which a house or structure has been erected, demolished, altered, or repaired, or fixtures or machinery furnished or erected, or improvements made, by special contract with the owner or the owner's agent, in favor of the contractor, mechanic, laborer, founder or machinist, who does the work or any part of the work, or furnishes the materials or any part of the materials, or puts thereon any fixtures, machinery, or material, and in favor of all persons who do any portion of the work or furnish any portion of the materials for such building; provided, that the subcontractor, laborer or materialman satisfies all of the requirements set forth in § 66-11-145, if applicable.

The lien statutes should be considered in *pari materia*. Tennessee Code Annotated § 66-11-146 provides:

66-11-146. Residential real property – Right of lien. – (a)(1) As used in this subsection, "residential real property" means a building consisting of one (1) dwelling unit in which the owner of the real property intends to reside or resides as the owner's principal place of residence, including improvements to or on the parcel of property where such residential building is located, and also means a building consisting of two (2), three (3) or four (4) dwelling units where the owner of the real property intends to reside or resides in one (1) of the units as the owner's principal place of residence, including improvements to or on the parcel of property where such residential building is located.

(2) Notwithstanding any other provision of law to the contrary . . . on individual contracts to improve residential real property, a lien or right of lien upon such property shall exist only in favor of the general contractor who enters into such contract with the owner of such property or the owner's agent. No lien, except the general contractor's lien shall exist upon such property under such contract in favor of a subcontractor, materialman, mechanic, laborer, founder, machinist, or any other person who does the work or any part of the work, or furnishes the materials or any part of the materials, or puts thereon any fixtures, machinery or materials, ordered by or through such persons.

"Contractor" is defined as a "person other than a materialman or laborer who enters into a contract with the owner of real property for improving it . . ." Tenn. Code Ann. § 66-11-101. It is not disputed that The Construction Team: (1) was the general contractor, (2) on the individual contract, (3) to improve residential real estate. It is further undisputed that the plaintiff was only a materialman.

Tennessee Code Annotated § 66-11-102 is *broadly* applicable to a "house or structure, fixtures or machinery," while Tennessee Code Annotated § 66-11-146 has *limited* application to *residential real property* described as a building where the owner intends to reside. Therefore, Tennessee Code Annotated § 66-11-146 is applicable to this case. The language is imperative: No lien, except the general contractor's lien, shall exist upon residential real property.

The Chancellor found that Mr. Cornett did not contract with the plaintiff as alleged, and that he paid for whatever materials he personally purchased. This finding is relevant to the issue of whether Mr. Cornett incurred liability for materials, notwithstanding, the plaintiff could not assert a lien. We conclude that the evidence does not preponderate against this finding. Rule 13(d), Tenn. R. App. P.

The alternate grounds of recovery alleged by the plaintiff, breach of contract and according to *quantum meruit*, were not addressed by the trial judge - other than the finding that Mr. Cornett did not contract as alleged - and are not presented as issues for our consideration.

Finally, we again note that the award of damages for the wrongful filing of the lien is not an issue.

The judgment is affirmed at the costs of the appellant, Martin Door and Window Company, Inc.

_____
WILLIAM H. INMAN, SENIOR JUDGE